IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LATOYA THREATT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:14-cv-0209-JEO |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Plaintiff Latoya Threatt brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act and for Supplemental Security Income Benefits ("SSI"). (R. 1).[1] This case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference. The parties have consented to the jurisdiction of this court for the disposition of the matter. (Doc. 10). *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

**I. Procedural History**

Plaintiff filed applications for disability insurance benefits under Title II of the Social Security Act and for SSI on July 29, 2010. (R. 20, 81). These applications were initially denied. (*Id*.) Afterwards, she requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 23, 2012. (R. 20, 40-73). The ALJ denied disability benefits to Plaintiff on November

---

[1] References herein to "R. ___" are to the administrative record located at Document 8 (Answer of the Commissioner).

12, 2012, concluding that Plaintiff is not disabled under the Social Security Act. (R. 34). The Appeals Council declined to grant review of the ALJ's decision on December 5, 2013. (R. 1). Plaintiff then field this action for judicial review pursuant to § 205(g) and § 1631(c)(3) of the Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3). (Doc. 1).

**II. Standard of Review**

In reviewing claims brought under the Social Security Act, this court's role is a narrow one. "Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The plaintiff must demonstrate that the decision of the Commissioner is not supported by substantial evidence. *See, e.g.*, *Allen v. Schweiker,* 642 F.2d 799 (5th Cir. 1981). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted). The court gives deference to factual findings and reviews questions of law de novo. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1982))(internal quotations and other citations omitted). As noted above, conclusions of law made by the Commissioner are reviewed de novo. *Cornelius,* 936 F.2d at 1145. Accordingly, "[n]o ... presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

**III. Discussion**

    **A. Facts**

Plaintiff was 32 years old at the time of her hearing and her educational background includes some college course work. (R. 46, 180). At 32, Plaintiff is considered a "younger person" according to 20 C.F.R. §§ 404.1563(c) and 416.963(c). Plaintiff's past relevant work experience is as a dental assistant, parking lot attendant, and teacher's assistant. (*Id*. at 64, 180). Plaintiff contends she has been unable to engage in substantial gainful activity since August 1, 2007. (*Id*. at 23). At her hearing before the ALJ, Plaintiff testified she is unable to work due to pain which travels throughout her body. (*Id*. at 47). She stated that she experiences numbness and pain in her right hand "practically all the time," and she requires an arm brace 24 hours a day. (*Id*.) Her pain causes her to have difficulty in gripping things and in bathing herself. She also has some pain and numbness in her left hand, but not to the extent experienced in her right hand. She further has pain in her lower back and legs. Because of her pain and depression, she finds it hard to get up and get started in the morning. (*Id*.)

The ALJ found Plaintiff has severe impairments, including anxiety, depression, carpal tunnel syndrome, and fibromyalgia. (*Id*. at 23). He also found, however, that she did not have any impairment or combination of impairments listed in, or medically equal to, one listed in the regulations. (*Id*.) He further found that her subjective complaints were not fully credible. (*Id*. at 25-31). He then concluded that she had the residual functional capacity ("RFC") to perform the physical exertion and non-exertion requirements of light work with limitations, including: only occasional bending or stooping; no climbing, work around unprotected heights, or driving or operation of hazardous machinery; and restricted to simple, repetitive, non-complex tasks primarily done with things as opposed to with the general public. (*Id*. at 25). He noted that she is able to use

her right hand for occasional gross and fine handling. (*Id*.) He also found she could not perform her past relevant work, but could do other work in the national economy such as mail room clerk. (*Id*. at 34, 67-68). Whereupon, he determined Plaintiff was not disabled. (*Id*. at 34).

### B. Plaintiff's Claim

Plaintiff asserts that the ALJ did not properly evaluate the medical source opinion of Dr. Anthony A. Cibulski provided on a "Statement of Incapacitating Condition" form prepared for the State Food Stamp Office on January 20, 2011. (Doc. 12 at 6-7). Specifically, she contends that "the ALJ fails to even mention Dr. Cibulski's opinion, much less address the weight to be given that opinion." (*Id*. at 7). She requests that this court reverse the decision of the Commissioner and award her benefits, or, in the alternative, that the court remand the case "for full and proper consideration of the medical evidence of record, including the opinion of ... Dr. Cibulski." (*Id*. at 10). The Commissioner responds that the decision should be affirmed because further consideration of Dr. Cibulski's statement would not change the administrative result. (Doc. 13 at 5).

To properly evaluate Plaintiff's argument, the statement must be placed in context with the totality of the evidence examined by the ALJ. The court will begin with the documentary evidence in the record, proceed to Plaintiff's testimony from the hearing, and then set out Dr. Cibulski's statements on the form. Thereafter, the court will end with an analysis of all of the material.

#### 1. The Documentary Evidence

Plaintiff's relevant medical history begins with an April 17, 2008, new patient encounter with Dr. Rian L. Montgomery, premised on complaints of "aching all over for the past few months," headaches, and lower back pain. (R. 255). She was diagnosed with headache, tachycardia, low back pain, acute sinusitis, and chronic bronchitis. (R. 256). She was prescribed medication for the sinusitis, bronchitis, and back pain. A return visit was planned for two months. (*Id*.) She returned

for a follow-up visit on May 27, 2008. She complained of heart palpitations over the preceding days. She was diagnosed with anxiety syndrome and prescribed Buspar. (R. 251).

On September 18, 2008, Plaintiff returned to Dr. Montgomery, complaining of palpations and "severe right wrist pain for several weeks." (R. 243). She was diagnosed as having carpal tunnel syndrome, tachycardia, and anxiety syndrome. (*Id*.) She was continued on her medications and told to obtain an over-the-counter wrist brace for her hand. (*Id*.)

On January 15, 2009, she saw Dr. Andrew Cibulski concerning her problems with carpal tunnel syndrome and anxiety. (R. 267). He continued her on her previous medications. She returned on June 6, 2009, and her medications were refilled. (*Id*.) In her January 28, 2010 visit, she complained of numbness in her right fingers, "racing thoughts," depression, and anxiety. Her medications were continued. (R. 265). She was also prescribed Seroquel. (*Id*.) During her April 5, 2010 visit, she complained of a rapid heart rate, aching all over, and feeling cold. (R. 263). She was continued on her medications, including Seroquel. (*Id*.) During this visit, her carpal tunnel was described as "mild." (R. 264). In an April 12, 2010 visit she reported that the Seroquel was helpful. (R. 266). On May 21, 2010, Plaintiff was prescribed Klonopin on a trial basis and referred for an appointment with psychiatry. (*Id*.)

On September 15, 2010, she presented for a psychiatric evaluation at Capitol Care South ("Capitol Care"). The intake notes from that visit provide that she was previously treated at the clinic, but was discharged in May 2009 due to her failure to show up for her appointments. She reported complaints of "low mood," irritability, lack of energy, and anxiety. She also stated that she was off her medication for over a year. (R. 274). She was diagnosed with major depressive disorder and anxiety. (*Id*.) She was prescribed Remeron, Klonopin, and a treatment plan that included therapy. (R. 276).

On October 13, 2010, Plaintiff was prescribed Tramadol by Dr. Cibulski for pain. On November 8, 2010, her Tramadol prescription was refilled and she was referred to Orthopaedic Specialist Dr. Carter Slappey for a consultation regarding her right arm and hand. (R. 260).

Plaintiff saw Dr. Slappey the next day. X-rays of her hand and wrist were negative. (R. 270). He noted that "[e]xamination of her right hand reveals some subjective tingling and numbness especially in her median nerve distribution. She had no obvious atrophy[,] fairly good strength and mildly positive Tinel's sign and Phalen's test." (*Id*.) He scheduled her for some nerve conduction studies.[2] (*Id*.)

Plaintiff returned for therapy at Capitol Care on November 15, 2010. She reported that her anxiety was much improved. She did complain that the Klonopin was too sedating. She also acknowledged not being fully complaint with her medications. Her treatment plan included discontinuing the Klonopin and beginning treatment with Xanax. (R.. 273-76). On December 20, 2010, she presented for a routine follow-up visit. She reported that her anxiety was improved and she was taking her Xanax. She reported no improvement in her mood, but admitted being non-compliant with her Remeron. She explained that she "often forgets" to take the medication. (R. 324). Her medications were adjusted and she was instructed on the importance of "good sleep hygiene"[3] and taking her medications. (*Id*.)

On January 29, 2011, Neurologist Dr. Sharman Sanders conducted a physical review of Plaintiff and her medical records. Plaintiff's chief complaint was loss of function in her hands. (R.

---

[2]There is no evidence in the record concerning the results of the test or whether the tests were ever conducted.

[3]The notes reflect that Plaintiff was taking naps during the day, which oftentimes impacted her sleep. (R.324).

308). Her additional complaints included cramping and aching all over her body, significant anxiety, and depression. (*Id*.) Dr. Sanders observed that Plaintiff could walk without assistance, sat comfortably, and was able to get onto and off the examination table with ease. He noted no paravertebral muscle spasms or tenderness, although she did have nonspecific diffuse muscle tenderness. He further noted no joint crepitus, effusion or obvious deformities; good motor strength (5/5) with normal muscle bulk and tone; and normal range of motion. He did, however, note "a fine motor tremor in the bilateral arms with use." (R. 309-10). He concluded that she had "[m]ultiple somatic complaints" and that evaluation by psychiatry might be helpful in view of her history of anxiety and depression. (R. 310-11).

A January 31, 2011, x-ray of Plaintiff' right wrist revealed no acute bony abnormalities, no acute fracture or dislocation, and mild foreshortening of the ulna, which was probably of congenital origin. (R. 306-07).

Dr. Robert Estock, a non-examining consultant, conducted a review of Plaintiff's medical records on February 11, 2011. He noted that Plaintiff was attending outpatient mental health treatment for her anxiety and depression, which, according to Estock, stems from "social stress [issues,] mostly finances and worry over her physical issues." (R. 289). He found that Plaintiff has a moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. He felt, however, that despite these moderate difficulties, Plaintiff could understand, remember, and carry out simple instructions and work procedures. (R. 28, 301). He further reported that she should be able to concentrate and attend to simple tasks for two hours with customary breaks and rests. (R.301). Finally, he noted (1) she should avoid quick decision making, excessive workloads, rapid changes, and multiple demands, (2) she should have casual and non-intensive interaction with the

public, (3) feedback should be non-confrontational, and (4) changes in her work environment should be infrequent and presented gradually. (*Id*.)

On February 16, 2011, Plaintiff had a follow-up visit at Capitol Care. During her assessment, she admitted that she had not been compliant with her medications. She complained of anxiety, but denied depression. She also was "[a]ngry her disability [claim] was refused." (R. 323). The assessment also noted that "[s]he is able to work, but not willing." (*Id*.) She was encouraged to engage in part-time work but she was "not receptive to this either." (*Id*.) Her treatment plan mandated compliance with her medications. (*Id*.)

Plaintiff presented for her next therapy session on March 23, 2011. Her session summary indicates the following:

> She is still not taking her [medications] <u>at</u> <u>all</u>. She states that she is scared to take them. We thoroughly discussed risks/benefits and importance of compliance. This is a chronic issue. She continues to be depressed and irritable. Encouraged more frequent therapy, but she is not receptive. She denies ... mania or psychosis....

(R. 322 (underline in original)). Her May 23, 2011 session notes indicate that she remained non-compliant with regard to her medications and that she was experiencing crying episodes and a depressed mood. (R. 319). Her Remeron and Xanax prescriptions were discontinued since she was "not taking [them] anyways." (*Id*.) She was started on Benadryl for sleep and Klonopin for anxiety. (*Id*.)

On July 11, 2011, Plaintiff's treating psychologist, Dr. Roger D. Ridgeway, completed an "Abnormal Involuntary Movement Scale (AIMS)" assessment. (R. 314). It indicated that she had no abnormal, involuntary movements of the face, upper extremities, lower extremities, or the neck. (*Id*.) He recommended individual, family, and group therapy; medication monitoring; and physician medical assessment and treatment as needed. (*Id*. at 313). He continued her Klonopin prescription

and added Abilify for sleep. (R. 317).

On August 4, 2012, Dr. Sylvia Colon, a psychiatrist, examined Plaintiff at the request of the state agency to assist in determining her ability to do work-related activities on a sustained basis. (R. 329-37). Plaintiff's chief complaints during the interview were anxiety, depression, Fibromyalgia, and carpal tunnel syndrome in her right hand. (R. 334). Plaintiff "report[ed] pain all over and all the time." (*Id.*) Dr. Colon noted Plaintiff's noncompliance with recommended mental health treatment. (*Id.*) She also noted Plaintiff was "independent in activities of daily living, primarily takes care of her children." (R. 335). She further noted Plaintiff had normal thought content; orientation as to person, place and time; good memory; appropriate abstract thinking; and fair judgment and insight. (R. 335-36). Dr. Colon diagnosed Plaintiff with "major depression, moderate, without psychotic features." (R. 337). Plaintiff's prognosis was "guarded due to her history of noncompliance with treatment." (*Id.*) Dr. Colon concluded that treatment was available and effective for her depression and, if Plaintiff was responsive, it was "as likely as not (a 50/50 chance) the symptoms could resolve in one year." (*Id.*)

### 2. Plaintiff's Testimony

The ALJ summarized Plaintiff's testimony as follows:

The claimant testified that she was 32 years of age with a high school degree and 1½ years of college. She testified that she lived with her two sons, aged 5 and 10; her grandfather; and her uncle. She testified that she was unable to work due to body pain which traveled throughout her body. She testified that her right hand was always numb and that she required a hand brace all of the time. She testified that she had difficulty with personal hygiene due to the numbness in her hand. She testified that the body pain made her depressed such that she trembled and cried all of the time. She testified that ... she had been diagnosed in 2004 or 2005 with carpal tunnel syndrome in both hands, but that her right hand was so much worse. She testified that she had difficulty writing with her right hand, cannot lift a gallon of milk, and she has constant hand pain. She testified that the pain went up to her elbow, which becomes numb, and that her shoulders are also sensitive. The claimant testified that she took Lorica and Remron (sic) for the pain and that the pain came without

warning. She testified that the pain had become worse in the past two years and was intolerable. She testified that her legs hurt in the front and back and that the pain went from one leg to the other. She testified that sometimes when she walked, she felt as though her ankles would break. She testified that she could stand for about 30 to 35 minutes before needing to get off her feet; walk for about ½ block; and sit for an hour before she began squirming. She testified that bending does not bother her too bad unless she is having sharp pains in her back. She testified that the pain in her hands and body is a level 8 out of 10. She testified that she is exhausted 5 to 6 hours a day such that she had to lie down frequently. She testified that she was depressed with symptoms of crying a lot and not wanting to leave home. She testified that people made her nervous and that her sister did the driving. She testified that she could not remember things and suffered from fatigue, frustration, and agitation. She testified that driving was difficult for her because of the hand pain. She testified that she did not sleep well and was up every couple of hours. She testified that she would lie down unless she had to go somewhere or had something she had to do. She testified that she did not have much of an appetite, did few chores, and that it was hard to iron. The claimant testified that on a typical day, she got up at 6:00 a.m. and woke up the children. She told me her sister ironed their clothes, and she saw them off to school. She testified that she went back to bed after they left until they got home, then she would help with their homework and lie back down.

(R. 26).

Premised on this evidence, the ALJ determined "that while [Plaintiff's] medically determinable impairments could be expected to cause some pain and limitations, substantial evidence fails to support a conclusion that objectively determined her medical conditions are disabling." (R. 30). He went on to find that Plaintiff's "statements concerning the intensity, persistence and limiting effects of her impairments are not fully credible to the extent they are inconsistent" with the residual functional capacity assessment. (*Id*.) He also noted Plaintiff's non-compliance with recommended medical treatment and medications and that "[h]er failure in this regard undermines her assertions." (*Id*.)

### 3. The Statement of Incapacitating Condition

On January 20, 2011, Dr. Cibulski completed a Statement of Incapacity for the State Food Stamp Office on behalf of Plaintiff. (R. 227-28). He indicated on the form that Plaintiff was

incapacitated due to chronic lumbar pain and bilateral carpal tunnel syndrome since 2009. (R. 228). He also indicated on the form that she should never lift over 15 pounds and that her condition was such "as to eliminate all likelihood of her ability to ever engage in gainful employment again." (*Id.*)

### 4. Analysis

Plaintiff argues that the ALJ failed to even mention, much less consider, Dr. Cibulski's opinion as articulated in the Statement of Incapacity. (Doc. 12 at 7). She further states that because the ALJ indicated in his decision that he was giving the opinions of Plaintiff's treating physicians great weight, "Dr. Cibulski's opinion should be given great weight." (*Id.*)

At the outset, it should be noted that the opinion of the ALJ at no point specifically addresses Dr. Cibulski's Statement of Incapacity. Accordingly, the pertinent question is whether the statement or the opinions contained therein are of such import as to warrant a finding contrary to that of the ALJ by this court or to warrant a remand of the case to the ALJ for further consideration of the statement in light of the other evidence. The Commissioner argues that neither is appropriate and that the decision of the ALJ should be affirmed.

An ALJ has the "duty to develop the record fully and fairly." *Wilson v. Apfel*, 179 F. 3d 1276, 1278 (11th Cir. 1999) (per curiam). This obligation has been characterized as a "special duty." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). However, even in cases involving this special duty, "a showing of prejudice must be made before [a court] will find that a hearing violated [a] claimant's rights of due process and requires a remand to the Secretary for reconsideration." *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985) (per curiam). In deciding whether sufficient prejudice exists to warrant remand, "[t]he court should be guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice' " *Graham*, 129 F.3d at 1423.

The two-page form completed by Dr. Cibulski related to Plaintiff's eligibility to receive Food

11

Stamps. It did not include any narrative in support of the stated conclusions. Additionally, Dr. Cibulski's treatment notes do not demonstrate that Plaintiff's condition precluded all work at that time or in the future. Dr. Cibulski used conservative measures, particularly medication, to treat Plaintiff. Additionally, nothing in the record supports that Plaintiff is precluded from all work. To the contrary, the substantial evidence articulated above, including her non-compliance with prescribed medication and treatment, indicates otherwise.

To the extent Dr. Cibulski had concerns about Plaintiff's carpal tunnel syndrome, which he described as "mild" (R. 264), he referred Plaintiff to Dr. Slappey for a consultation. Dr. Slappey had x-rays taken of Plaintiff's hand, which were negative. He also noted that her "right hand reveals some subjective tingling and numbness especially in her median nerve distribution. She has no obvious atrophy, fairly good strength and mildly positive Tinel's sign and Phalen's test." (R. 270). However, nothing in the record supports Dr. Cibulski's conclusory statement that Plaintiff's condition precludes all work, including any future work.

Finally, Plaintiff's argument for a remand is not supported by the facts or the law. The ALJ conducted a thorough review of the entire record. Nothing indicates any evidentiary gaps resulting in unfairness or prejudice. *Graham*, 129 F.3d at 1423. The substantial evidence supports the determination of the ALJ that Plaintiff was not disabled. Absent a demonstration of prejudice, she is not entitled to the requested relief.

## VI. Conclusion

The ALJ, in his review of the entirety of the record, properly found substantial evidence to conclude that Plaintiff was not disabled under the Social Security Act. Thus, the undersigned finds that the Commissioner's decision is due to be affirmed.

**DATED**, this the 6th day of January, 2015.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge